Stella Shewczuk  
vs.  
Contrexeville  
Manufacturing Co.  
W. C. A. Pet. No. 1321

## DECISION.

### May 6, 1932.

WALSH, J. This is a petition by Stella Shewczuk for compensation under the Workmen's Compensation Act as a dependent of her husband, John Shewczuk, who died on December 12, 1929, and who up to the time of his death was employed by the Contrexeville Manufacturing Company at Manville as general handy man in the finishing room.

From the evidence it appears that at about 11:30 o'clock on the morning of December 12, 1929, John Shewczuk was seen running through the finishing room into the pressing room and then outside into the snow, crying out that he was going to die. He was immediately brought back into the mill and laid down on some cloth, apparently in great pain and groaning but saying nothing. He was then taken by a fellow employee and Dr. Thibault to the Woonsocket Hospital and during that trip he groaned violently but said nothing. There he died three hours later.

According to the death certificate made out by Dr. R. G. Reed, medical

examiner, the cause of death was "suicidal by drinking sulphuric acid, jealousy," and the informant was Stella Shewczuk, the present petitioner. She admits that she had a conversation with Dr. Reed through an interpreter as to the death of her husband.

Mr. Russell H. Handy, the owner and general manager of the mill, testified that his investigation disclosed that about half an hour before the noon lunch hour on the morning of this affair, John Shewczuk had gone out of the finishing room onto an outside loading platform, had broken off the top of a glass carboy filled with sulphuric acid by means of a metal scraper belonging to another workman, poured some of the sulphuric acid into a preserving jar, drank the acid, and then, throwing the jar aside, ran through the mill groaning and crying out that he was going to die and that he wanted to die.

The claim is now made in behalf of the widow that her husband drank the sulphuric acid by mistake, and in support of that claim statements are offered which are alleged to have been made by the deceased while at the hospital and about an hour before his death to his wife and an orderly, Mr. Emil Kaskiw. Mrs. Shewczuk testified in substance that her husband told her that after he had eaten his lunch, he had drunk this acid, thinking that it was drinking water, whereas Mr. Kaskiw deposed that Shewczuk told him that after drinking with his fellow employees before lunch and after finding the water tank empty, he broke off the top of the carboy of acid, drank the acid and thought that it might have been alcohol. (Deposition p. 4.)

The burden of proving the essential facts upon which the payment of compensation depends rests upon the petitioner.

*Corral* vs. *Hamlyn & Son*, 94 Atl. 877 (R. I.) ;

*Andres* vs. *Blackstone Valley*, etc., R. I. Rescripts, Vol. 3 at page 478—December 26, 1919.

The evidence in the present case is to the effect that deceased was employed in this mill for more than seven years; that a part of this time he worked in the dyehouse where sulphuric acid from carboys was used; that on one occasion, when cleaning up a broken carboy, he asked for rubbers to protect his shoes from the acid; that at no time during his employment were carboys used for drinking water; that drinking water was kept in an ordinary water cooler in the room where he worked and in the event that the supply thereof became exhausted, it was the practice of employees to procure a new supply from a well in the mill yard. If, upon these facts, the deceased broke the neck of the carboy, took some of its contents and drank them, it is repugnant to our common sense to decide that he did it through mistake. The ordinary person, or one of sub-normal intelligence even, should have known the possible results. We must conclude, therefore, that the cause of death of the employee was not the result of a mistake.

Was the risk of drinking this acid such a one as arose out of the employment? Proper drinking water was provided by the employer in the room where the deceased worked or in a well in the mill yard. The water in the cooler or from the well was safe. The contents of carboys might well be dangerous. All injuries accruing to a workman while on the premises of his employer are not covered by the Compensation Act. The risks covered are only those incidental to normal, expressly ordered or emergency performance of duties of the employee.

The weight of authority, it seems to us, is that an employee injured during working hours and on his employer's premises, while drinking a substance from a carboy, an obviously dan-

gerous and uncommon method of satisfying his thrist, without the knowledge or approval of his employer, does not suffer an accident arising out of and in the course of his employment.

Petitioner has argued that there is a presumption that the deceased did not commit suicide, and a fortiori if death was not suicidal, it must be called "accidental" within the meaning of the Workmen's Compensation Act. All the facts and all the reasonable inferences in the instant case seem to point to but one conclusion, namely, that the deceased did not drink this powerful acid accidentally. The burden is upon the petitioner to prove by facts or reasonable inferences that the death of the employee resulted from accident arising out of the employment. We feel that she has not done so in this case.

The petition for relief is denied and dismissed.

For petitioner: John R. Higgins.

For respondent: Gardner, Moss & Haslam.